Sanchez v 1067 Fifth Ave. Corp. (2020 NY Slip Op 07326)





Sanchez v 1067 Fifth Ave. Corp.


2020 NY Slip Op 07326


Decided on December 08, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 08, 2020

Before: Acosta, P.J., Mazzarelli, Moulton, González, JJ. 


Index No. 301451/13 Appeal No. 12122 Case No. 2019-03453 

[*1]Silvia Sanchez, Plaintiff-Respondent,
v
1067 Fifth Avenue Corp., et al., Defendants-Respondents-Appellants, John A. van Deusen & Associates, Inc., Defendant-Appellant-Respondent.


Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Elmsford (Lynn Abelson Liebman of counsel), for appellant-respondent.
Law Office of Vincent D. McNamara, East Norwich (Charles D. Teixeira of counsel), for 1067 Fifth Avenue Corp., and Douglas Elliman Property Management, respondents-appellants.
Gottlieb Siegel & Schwartz, LLP, New York (Lauren M. Solari of counsel), for American Elevator & Machine Corp., respondent-appellant.
Pollack Pollack Isaac & DeCicco, LLP, New York (Brian J. Isaac of counsel), for respondent.



Order, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered on or about June 21, 2019, which denied defendants' motions for summary judgment dismissing the [*2]complaint and all cross claims against them, unanimously modified, on the law, to grant the motions of defendants 1067 Fifth Avenue Corp. (1067 Fifth) and Elliman Property Management (Elliman) and John A. Van Deusen & Associates, Inc. (VDA), and otherwise affirmed, without costs. The Clerk is directed to enter judgment dismissing the complaint and all cross claims as against 1067 Fifth and Elliman and VDA.
Plaintiff alleged that while she was attempting to exit the service elevator onto the sixth floor landing of 1067 Fifth Avenue, the inner gate of the elevator closed on her, pinning her right shoulder between the gate frame of the door, and descended to the first floor of the building. As the elevator descended, plaintiff injured her shoulder, neck, and back when she pulled her arm free. 1067 Fifth and Elliman were the owner and manager, respectively, of the building. Defendant American Elevator and Machine Corp. (American) was an elevator maintenance company retained by 1067 Fifth and Elliman to perform maintenance on the building's elevators, and VDA was hired by American to consult on a project to modernize the elevators.
Plaintiff failed to establish through the use of direct evidence that there was an issue of fact whether any of the defendants had actual or constructive notice of the defect that caused her injury. The building's superintendent did not receive any complaints about the defect, and American and VDA's mechanics and engineers had never heard of a similar condition. Plaintiff herself testified that she had never seen the elevator move before the inner gate was shut. Nevertheless, plaintiff could still establish an issue of fact on the issue of defendants' negligence under a theory of res ipsa loquitur.
There is no genuine dispute regarding whether the accident was one that does not ordinarily occur in the absence of negligence or whether plaintiff contributed to her injuries (see Kambat v St. Francis Hosp., 89 NY2d 489, 494 [1997]). However, the third requirement of res ipsa loquitur, that the accident be caused by an agency or instrumentality within the exclusive control of the defendant (id.), has not been met as to 1067 Fifth and Elliman, since they had ceded all maintenance and repair responsibility to American (see Levine v City of New York, 67 AD3d 510 [1st Dept 2009]).
American and VDA argue that they cannot be liable to plaintiff, even under a res ipsa loquitur theory, since their contracts were with 1067 Fifth and not intended to benefit plaintiff. However, under the terms of its contract with 1067 Fifth, American was responsible for providing "full comprehensive maintenance and repair services" for the elevators, which included maintaining "[t]he entire vertical transportation system," including "all engineering, material, labor, testing, and inspections needed to achieve work specified by the contract." Further, under the terms of the contract, maintenance "include[s], but is not limited to, preventive services, emergency callback services, inspection and testing services, repair and/or direct replacement component renewal procedures." The contract also provided for American to "schedule [ ] systematic examinations, adjustments, cleaning and lubrication of all machinery, machinery spaces, hoistways and pits," and to do all "repairs, renewals, and replacements . . . as soon as scheduled or other examinations reveal the necessity of the same." Further, American agreed to provide emergency call-back service 24 hours a day, 7 days a week. Given such broad contractual responsibilities, American's contract can be said to have "entirely displaced" the responsibility of 1067 Fifth and Elliman to maintain the safety of the building's elevators, which gave rise to a duty owed directly to plaintiff by American (see Espinal v Melville Snow Contrs., 98 NY2d 136, 140 [2002]). We disagree with American that its broad responsibilities did not begin until after the modernizations project for the elevators had been completed.
However, Espinal does not apply to VDA. VDA contracted with American to serve as a consultant on the modernization project, and while VDA may have observed inspections of the elevator, it did not contract with American to provide comprehensive maintenance. Accordingly, the court should have granted summary judgment in favor of VDA.
Finally, although plaintiff's response to American's summary judgment motion was untimely, it was providently accepted because American was not prejudiced by the late filing, and even benefited from it by submitting in reply an affidavit by its own expert (see Serradilla v Lords Corp., 117 AD3d 648, 649 [1st Dept 2014]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 8, 2020